1  Vincent Palomo
   P.O. Box 3236
2  Hagåtña, Guam 96932

3  pro se

ORIGINAL

FILED
DISTRICT COURT OF GUAM

JUN 16 2004

MARY L. M. MORAN
CLERK OF COURT

15

# UNITED STATES DISTRICT COURT
## DISTRICT OF GUAM

| | |
|---|---|
| VINCENT PALOMO, | Civil Case No. 04-00013 |
| Plaintiff, | |
| vs. | |
| FRANK ISHIZAKI, individually and as Director of Corrections; & CAPT. JESSE TUPAZ, individually and as Acting Superintendent; | OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF |
| Defendants. | |

The plaintiff, Vincent Palomo, appearing pro se, respectfully opposes the Defendants' Motion to Dismiss, which was filed on 3 June 2004, as Plaintiff has alleged facts in support of his claims for relief. Plaintiff respectfully requests to amend the complaint should the Court find that the claims are not properly stated. This opposition is based on the Exhibits already filed with the Court that were attached to the complaint.

### ARGUMENT

District courts generally disfavor motions to dismiss for failure to state a claim, as long-established federal policy of civil litigation is to decide case on proofs. Caldwell Trucking PRP Group v. Spaulding Composites, Co., Inc., 890 F.Supp. 1247 (D.N.J. 1995).

**I.   Defendants, In Their Official Capacities, Are Not Immune From This Suit.**

The Defendants hold in their motion to dismiss that they are immune from suit as officers of the government and as such are entitled to sovereign immunity. However, the Plaintiff has sued the Defendants in their official capacities for injunctive and declaratory relief, as well as their individual

Page 1 of 12

1    capacities for damages. Defendants cite Ngiraingas v. Sanchez, 495 U.S. 182, 110 S.Ct. 1737 (1990)

2    which was a suit against governmental officials for damages. In that case the Supreme Court of the

3    United States held that "neither the Territory of Guam nor its officials acting in their official are

4    'persons' under § 1983." Ngiraingas at 110 S.C.t 1743. The Ninth Circuit in Guam Society of

5    Obstetricians & Gynecologists v. Ada, 962 F.2d 1366 (9th Cir. 1992) pointed out the distinction

6    between § 1983 suits for damages and suits for injunctive relief and applied it to territories. "Of

7    course a state official in his or her official capacity, when sued for injunctive relief, would be a person

8    under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against

9    the state.'" Guam Society of Obstetricians & Gynecologists v. Ada, 962 F.2d at 1371 (Quoting Will

10   v. Michigan Dep't of State Police, 491 U.S. 58, 109 S.C.t. 2304, 105 L.Ed.2d 45 (1989). Other

11   citations omitted.) Plaintiff holds that the Defendants are not entitled to immunity in their official

12   capacities for prospective relief.

13   **II.    Defendants Are Not Entitled To Qualified Immunity.**

14          In order to overcome the defense of qualified immunity in a §1983 action for civil damages

15   from a government official performing discretionary functions, the Plaintiff is required to show that

16   the official violated clearly established statutory or constitutional rights of which a reasonable person

17   should have known. Conn v. Gabbert, 526 U.S. 286, 119 S.Ct. 1292, 143 L.Ed.2d 399 (U.S.Cal.

18   1999). Plaintiff's Complaint sufficiently alleges violations by the Defendants, of his clearly established

19   constitutional due process and equal protection rights, as well as violations of Plaintiff's clearly

20   established statutory rights which are raised as pendant claims in relation to the constitutional

21   violations.

22          Defendants as reasonable persons should have known that their actions or inactions violated

23   plaintiff's clearly established rights. Defendant Tupaz disapproved the decision of the Adjustment

24   and Classification Committee (A.C.C.) to promote Plaintiff from Maximum Custody Level 3 to

25   Medium Custody Level 1. Plaintiff contends that Defendant Tupaz did not have the authority to

26   disapprove the decision of the A.C.C., absent the provisions of objective information that would have

27

28                                          Page 2 of 12

1 further avoided the imposition of a second punishment for the same rule infraction and that his
2 disapproval rendered the due process provided by the A.C.C. meaningless. Plaintiff filed an
3 administrative appeal concerning Defendant Tupaz's action to Defendant Ishizaki which he did not
4 respond to. Plaintiff asserts in his complaint that the actions of Defendants was to further punish the
5 Plaintiff, through the classification process, without due process, which is a violation of clearly
6 established law. Plaintiff's right to equal protection was also violated when a similarly situated inmate
7 was treated differently. The actions and inactions of the Defendants were made in bad faith and with
8 punitive intent.

9 Qualified immunity is almost always a bad ground for dismissal for failure to state a claim of
10 a § 1983 suit and is more appropriately addressed on a motion for summary judgement. Manos v.
11 Caira, 162 F.Supp.2d 979 (N.D.Ill. 2001).

12 **III. Defendants Have Violated Plaintiff's Clearly Established Constitutional and Statutory Rights.**

13
14 A motion to dismiss requires that all allegations and inferences be presumed in favor of the
15 Plaintiff. For purposes of a motion to dismiss under FRCP Rule 12(b)(6), the facts in the complaint
16 are presumed to be true, and the complaint is liberally construed in favor of the plaintiff. See
17 Abramson v. Brownstein, 897 F.2d 389 (9th Cir. 1990). "The Rule 12(b)(6) motion ... only tests
18 whether the claim has been adequately stated in the complaint." Wright & Miller, Federal Practice
19 and Procedure; Civil 2d §1356 p.298. The court's inquiry on a Rule 12(b)(6) motion is essentially
20 limited to the content of the complaint, and it should not be dismissed for failure to state a claim
21 unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim
22 which would entitle him to relief. Id., citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also
23 Pillsbury v. Madison & Sutro v. Lerner, 31 F.3d 924, 928 (9th Cir. 1994). If a motion to dismiss is
24 made prior to any discovery or filing of an answer, the district court is loath to dismiss complaint
25 regardless of whether plaintiff is unlikely to prevail, unless defendant can demonstrate that plaintiff
26 is unable to prove facts which would entitle him to relief. Lawrence v. Cade & Saunders, P.C., 149
27 F.R.D. 14 (N.D.N.Y. 1993).

28

1    Under 28 U.S.C. § 1915A, when determining whether a complaint states a claim, a court must

2    accept as true allegations of material fact and must construe those facts in the light most favorable

3    to the plaintiff. Resnick v. Hayes, 200 F.3d 641 (9th Cir. 2000) (citing Cooper v. Pickett, 137 F.3d

4    616 (9th Cir. 1997)). Additionally, in general, courts must construe pro se pleadings liberally.

5    Resnick at 644. See Balistreri v. Pacifica Police Department, 901 F.2d 696, 699 (9th Cir. 1988).

6    Plaintiff is a pro se litigant with very limited knowledge of the law whose only access to the courts

7    is through an inadequate and out dated law library with no assistance from persons trained in the law.

8    The United States Supreme Court held that the fundamental constitutional right of access to the

9    courts for inmate litigants requires prison authorities to assist inmates in the preparation and filing of

10   meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance

11   form person trained in the law. Bounds v. Smith, 430 U.S. 817, 97 S.C.t. 1491, 52 L.Ed.2d 72

12   (1977). This is not being provided in the Guam Department of Corrections. The Court in this action

13   has also denied Plaintiff's motion for appointment of counsel.

14   Defendants may not require that Plaintiff establish facts at this stage of the litigation. Whether

15   the Defendants have violated any clearly established constitutional or statutory rights is a question

16   of fact. The Plaintiff should be allowed to conduct discovery.

17   Defendants violated Plaintiff's rights to due process and equal protection as well as Guam

18   law. The rights that Plaintiff contends were violated were clearly established at the time of the

19   violations. Plaintiff's rights to due process and to equal protection of the laws are established in the

20   14th Amendment of the United States Constitution. Executive Order 97-05 "Relative to Rescinding

21   Chapter 4 'Classification of Inmates' of Executive Order 94-19 and Promulgating a New Chapter 4

22   to Meet Present Departmental Goals toward Rehabilitation and Reintegration." (E.O. 97-05), and

23   General Order 97-006 "Adjustment Classification Committee Policy and Procedures" (G.O. 97-006)

24   were also clearly established at the time of the violations.

25   Due process in prison administrative proceedings is clearly established in Wolff v. McDonnell,

26   418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Defendant Tupaz violated Plaintiff's due

27

28   Page 4 of 12

process when he disapproved the decision of the A.C.C. to promote the Plaintiff, when his action was only to be ministerial in nature. Defendant Ishizaki also was responsible for that violation, in that it was brought to his attention and he failed to respond or take corrective action.

Right of prisoner to a classification hearing before a fair and impartial board, created by the state, is a liberty interest protected by the due process clause of the Fourteenth Amendment. Wakeinekona v. Doi, 421 F.Supp. 83 (D.C. Hawaii) Plaintiff was provided due process through the A.C.C. hearing where the A.C.C. reached a decision to promote the plaintiff. Defendant Tupaz disapproved the decision of the A.C.C. when his action according to E.O. 97-05 §4.10(E) was ministerial in nature. His disapproval of the A.C.C. decision rendered the due process provided by the A.C.C. meaningless. "[P]rocess which is a mere gesture is not due process." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313, 315 (1950). With respect to the procedures employed in an institutional classification committee action, the court will inquire only as to whether certain minimal due process standards have been met. Jones v. Institutional Classification Committee, Field Unit No. 8, 374 F.Supp. 706 (D.C.Va.) The action of Defendant Tupaz, made without due process, in disapproving the decision of the A.C.C., made the due process provided by the A.C.C. a "mere gesture."

Absent a statutory right created by state law, a state prisoner has no constitutionally protected liberty interest in his prisoner classification. Lokey v. Richardson, 534 F.Supp. 1015 (D.C.Cal.) Plaintiff's constitutionally protected interest is a statutory right created in E.O. 97-05 and D.O.C. policy General Order 97-006. In Sandin, the inmate incorrectly asserted "that any state action taken for punitive reason encroaches upon a liberty interest under the Due Process Clause even in the absence of any state regulation." Sandin at 515 U.S. 484, 115 S.Ct. 2300. Plaintiff in this action has a state created liberty interest in being in the general inmate population.

A prisoner must be afforded various due process guaranties if long term changes in his security classification are to result. Patterson v. Riddle, 407 F.Supp. 1035 (D.C.Va.) Plaintiff would

Case 1:04-cv-00013    Document 15    Filed 06/16/2004    Page 5 of 12

1  be confined in Maximum Custody for at the least eleven (11) months before his next classification

2  review hearing.

3      Any classification which imposes a substantial adverse change in the conditions of

4  confinement because of specific prior conduct is disciplinary and subject to the minimum standards

5  of due process notwithstanding the presence of elements of treatment, security, or administrative

6  necessity. Daigle v. Hall, 387 F.Supp. 652 (D.C. Mass.) In Sandin v. Conner, 515 U.S. 472, 115

7  S.Ct. 2293, 132 L.Ed.2d 418 (1995), the United States Supreme Court set a new standard of review

8  for due process in inmates' prison administrative proceedings:

9      "Following *Wolff*, we recognize that States may under certain circumstances create
       liberty interests which are protected by the Due Process Clause. (Cite omitted.) But
10     these interests will be generally limited to freedom from restraint which, while not
       exceeding the sentence in such an unexpected manner as to give rise to protection by
11     the Due Process Clause of its own force, (cites omitted), nonetheless imposes atypical
       and significant hardship on the inmate in relation to the ordinary incidents of prison
12     life."

13  Sandin, at 515 U.S. 472, 483, 115 S.Ct. 2293, 2300.

14      Confinement in Maximum Custody greatly differs from confinement in the general inmate

15  population and administrative segregation in the Department of Corrections. It is more akin to

16  disciplinary confinement.[1]  In maximum housing, inmates are not allowed to participate in any

17  rehabilitative or educational programs and are limited in the amount of property they may have in

18  their possession. All meals are served and eaten in the cells without chairs or tables. Inmates are

19  locked in their cells for twenty-three (23) hours a day with one hour out for exercise and showers,

20  while in leg restraints. Inmates in maximum custody have only one hour of visitation per week as

21  compared to the general population and administrative segregation inmates who have five hours and

22  forty minutes per week. Maximum confinement is a solitary type of confinement that inmates endure

23  for months and years at a time. Confinement in the maximum housing unit is punitive in nature.

24

25  ───────────────

26      [1] Currently changes are being brought about by the current Department of Corrections
    administration to improve on the conditions of confinement in Maximum Custody as a result of
27  the filings of administrative grievances by the inmates confined there.

28      Page 6 of 12

Ordinarily, a prisoner cannot be placed in punitive solitary confinement, unless the procedures employed by the prison officials comport with the minimum due process standards delineated by the United States in Wolff as applicable to prison disciplinary proceedings generally when an inmate's constitutionally protected liberty interests are at stake.

Due process requires that a state prison institutional classification committee act without punitive intent within the framework of the prison administrative organization. Lloyd v. Oliver, 363 F.Supp. 821 (D.C.Va.). E.O. 97-05 §4.3 provides, "Custody designations are not to be used as a form of punishment." The decision of Defendant Tupaz was made with the intent to further punish the Plaintiff through the classification process, as stated in his comment in the A.C.C. "Notice of Hearing & Recommendations" (Exhibit "D" attached to the complaint.) The action of Defendant Tupaz was made without any due process being provided to the plaintiff.

In 42 U.S.C. § 1983 action by inmate alleging deprivation of liberty interest based on his placement in protective segregation and increased security confinement without administrative hearings or review, prison officials' motivation was irrelevant; if conduct resulting in deprivation is intentional or deliberately indifferent, constitutional violation results even if decision to deprive was made with best of motives. Howard v. Grinage, 82 F.3d 1343 (6th Cir. 1996). Plaintiff was essentially deprived of an administrative hearing or the results of the A.C.C. hearing, when Defendant Tupaz with deliberate indifference disapproved the decision of the A.C.C.

Defendant Ishizaki was responsible for the actions of Defendant Tupaz and did not take any corrective action, or even respond to the Plaintiff's appeal, which made him aware of the violations. This was done with deliberate indifference to Plaintiff's constitutional rights. To hold individual liable under § 1983, plaintiff must allege facts that demonstrate individual defendant's personal involvement in alleged deprivations; personal involvement may be based on allegations that defendant failed to remedy the wrong after being informed of violation through report or appeal or he allowed continuance of policy or custom. Pravda v. City of Albany, N.Y., 956 F.Supp. 174 (N.D.N.Y. 1997) See also Show v. Patterson, 955 F.Supp. 182 (S.D.N.Y. 1997).

1    There was no rational basis for the difference in treatment between Plaintiff and inmate Turner
2 since both were similarly situated. A plaintiff can allege an equal protection violation by asserting that
3 state action was motivated solely by a "'spiteful effort to "get" him for reasons wholly unrelated to
4 any legitimate state objective.'" Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct.
5 1073, 1074, 145 L.Ed.2d 1060 (2000) (quoting Olech v. Village of Willowbrook, 160 F.3d 386, 387
6 (C.A. 7 1998), quoting Esmail v. Macrane, 53 F.3d 176 (7th Cir. 1995)). To succeed on an equal
7 protection claim it is required to show that treatment received was invidiously dissimilar to that
8 received by other inmates. Lyon v. Farrier, 730 F.2d 525 (8th Cir.1984) (quoting Peck v. Hoff, 660
9 F.2d 371(8th Cir. 1981); Burns v. Swenson, 430 F. 2d 771, 778 (8th Cir. 1970), cert. Denied, 404
10 U.S. 1062, 92 S.Ct. 743, 30 L.Ed.2d 751 (1972)). The alleged invidious discrimination must be
11 against one person in favor of another person or class of persons, with no rational basis for any
12 differentiation in treatment. Burns v. Swenson, 430 F. 2d 771 (8th Cir. 1970). Whether the complaint
13 alleges a class of one or of five is of no consequence because the United States Supreme Court
14 concluded that the number of individuals in a class is immaterial for equal protection analysis.
15 Footnote on page 1074 in Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073, 1074
16 145 L.Ed.2d 1060 (2000)

17    The Plaintiff has raised numerous violations of Guam law and departmental rules and policies
18 as pendant claims since they are related to the constitutional deprivations caused by the Defendants.
19 "Pendant jurisdiction pertains to the concept whereby a federal district court, in the exercise of
20 jurisdiction over a federal law claim properly before it, may also, in its discretion proceed to extend
21 jurisdiction over a related state law claim where both claims arise from a common nucleus of
22 operative facts." Deluxe Black's Law Dictionary, Sixth Edition, citing Barnes v. Childs, 63 F.R.D.
23 628, 630. It is as a result of the violations of local law, rules and policies that the constitutional
24 deprivations arose.

25    Defendant Tupaz violated E.O. 97-05 4.10(E) when he disapproved the decision of the
26 A.C.C. when his "action" pursuant to §4.10(E) was only ministerial in nature. He also violated E.O.
27

28    Page 8 of 12

97-05 §4.3 when he disapproved the promotion of Plaintiff with the intent to further punish the Plaintiff. This resulted in plaintiff's denial of due process, with the intent to subject him to further punishment for an incident that he was already punished for. Plaintiff's tenth cause of action that Defendant Tupaz violated Executive Order 94-19 "Rules and Regulations for the Administration of Correctional Institutions and Other Places of Confinement" (E.O. 94-19) §3.2(A), which holds that "YOU HAVE THE RIGHT to expect that as a human being you be treated respectfully, impartially, and fairly by all personnel" (capitalization in original), is raised as a pendant claim in relation to the constitutional equal protection violation.

Defendant Ishizaki violated G.O. 97-006 §27.4 when he did not respond to Plaintiff's administrative appeal and correct the constitutional violations of due process and equal protection against the Plaintiff. Plaintiff's sixth, seventh, and eighth causes of action are also raised as pendent claims for Defendant Ishizaki's failure to correct the constitutional violations. The language of §27.4 is ambiguous in that appeals "must" be answered and if not are moot.

Plaintiff's eleventh cause of action is raised also as a pendant claim. Since due to the action of Defendant Tupaz and the inaction of Defendant Ishizaki, Plaintiff was denied his right to forensic programs while in Maximum Custody without due process of law. Plaintiff has a right to rehabilitation as established by Title 9 Guam Code Annotated §90.15. He has a right to forensic programs pursuant to E.O. 97-05 and General Order 97-012 "Inmate Institutional Activities."

**IV.    Plaintiff Did Exhaust Administrative Remedies.**

Plaintiff exhausted his administrative remedies when he appealed to Defendant Ishizaki, Defendant Tupaz's action to disapprove the decision of the Adjustment and Classification Committee, pursuant to General Order 97-006 "A.C.C. Policy and Procedures" § 27 "Appeals." Appeals of the A.C.C. are administrative remedies and are filed to the Director of Corrections, the highest position to be held in the Department of Corrections, which was Defendant Ishizaki's position at the time of the violations cited in Plaintiff's complaint.

1     Defendants contend that the Plaintiff should have exhausted administrative remedies pursuant

2   to E.O. 94-19 Chapter 16 in order to be in compliance with 42 U.S.C. § 1997(e). In General Order

3   97-006 §27.3, it states that "[d]ecisions of the Director on appeals are final." It is clear from this

4   policy that inmates cannot further pursue the issues on their administrative appeals of A.C.C.

5   decisions within the Department of Corrections once they have appealed to the Director of

6   Corrections. However, as shown in the complaint, the Plaintiff did try to further pursue his issues

7   through Administrative Remedy Requests and departmental grievances, all to no avail.

8     Executive Order 94-19 §16.1(B) states, "[m]ost complaints can be resolved quickly and

9   efficiently through direct contact with the members who are responsible in the particular area of the

10  problem." The director of corrections is responsible for appeals of the A.C.C. as per General Order

11  97-006 §27 and is also responsible for the decisions of staff such as the P.S.A directly under him.

12    According to sections 16.2(D)(1) and 16.2(D)(2) of E.O. 94-19, it is required that inmates

13  exhaust complaints to middle management/section supervisor, parole officer, assigned caseworker,

14  and the Prison Security Administrator (P.S.A.). None of these officials have the authority to

15  supersede decisions (or lack thereof) of the director.

16    Chapter 16 of E.O. 94-19 is essentially for complaints concerning inmates conditions of

17  confinement and not for appealing Department of Corrections administrative hearing board decisions.

18    Section 16.3 of E.O. 94-19 states that "[i]n the event that a complaint or grievance is not

19  resolved at the section/division level, it shall be referred to the Director for action if so initiated by

20  the inmate. **The decision of the Director is final**." (Emphasis added.) In General Order 97-006

21  §27.3 it makes clear that "**[d]ecisions of the Director on appeals are final**." (Emphasis added.)

22  Also, in E.O.94-19 §3.30(D), "**[d]ecisions by the Director ... on appeals are final**."[2] (Emphasis

23  added.) It is obvious from the language of these sections that the director of corrections is the final

24  decision maker in the Department of Corrections.

25

26    [2] This is regarding appeals by inmates of Disciplinary Hearing Board (D.H.B.) decisions.

27  The D.H.B. conducts inmate disciplinary proceedings.

28                                    Page 10 of  12

It would be fruitless for the Plaintiff to file through the grievance process as provided by Executive Order 94-19 Chapter 16. In the first place, it is clear that the director's decision on an appeal is final. Also, the Plaintiff would essentially be addressing his grievance step by step to lower ranking staff in the department and asking them to correct the decision (or in this case, the lack thereof) of the director. After going through the chain of command, the Plaintiff would finally have to readdress the issues to the director once again. Defendant Ishizaki failed to respond to Plaintiff's administrative appeal to him in the first place.

In Shabazz v. Cole, 69 F.Supp2d 177, 196 N.20 (D. Mass. 1999), the district court there held that, the administrative appeal of a guilty finding in a disciplinary proceeding of an inmate, in that case satisfied any exhaustion of administrative remedies required under the Prison Litigation Reform Act (PLRA), of which 42 U.S.C. § 1997(e) is a part. See Jenkins v. Haubert, 179 F.3d 19, 23 n. 1(2nd Cir. 1999) and Salahuddin v. Mead, 174 F.3d 271 (2nd Cir. 1999).

Plaintiff asserts that he has exhausted all administrative remedies that are available to him in accordance to the policies and procedures of the Department of Corrections in compliance with 42 U.S.C. § 1997(e).

## V. Personal Jurisdiction.

Defendants cannot make special appearance for any purpose other than challenging lack of personal jurisdiction. Their failure to do so renders their appearance a waiver of any objection to lack of personal jurisdiction.

Defendants cite Stafford v. Briggs, 444 U.S. 527, 100 S.Ct. 774, 63 L.Ed.2d 1 (1980) which concerns parties to an action that reside in different states. All the parties in this action reside on Guam and fall under the jurisdiction of the District Court of Guam.

In forma pauperis Plaintiffs must request service of summons and complaint for officer to be responsible for effecting service. Boudette v. Barnette, 923 F.2d 754, 757 (9th Cir. 1991). Plaintiff as an incarcerated inmate at the Guam Department of Corrections is in no position to perform personal service. The Plaintiff in this case filed an Application to Proceed Without Prepayment of

Fees and Affidavit and a Motion for Service of Process by United States Marshal on 17 March 2004 with his complaint. The request for service by the marshals was pursuant to Federal Rules of Civil Procedure Rule 4(c)(2). The Court granted permission to the Plaintiff to proceed in forma pauperis in an Order dated 10 May 2004. Plaintiff's Motion for Service of Process by United States Marshal was also ordered granted. The Court ordered that "[t]he summons and complaint shall be personally served upon Defendant s no later that 120 days from Plaintiff's March 17, 2004, filing of the complaint."

"[A] pro se Plaintiff should not be penalized for reliance on a United States marshal under Rule 4(c)(2)(B) and 28 U.S.C. § 1915(c)." Terrel v. Brewer, 935 F.2d 1015, 1018 n.4. (9th Cir. 1991). (Citing Puett v. Blanford, 912 F.2d 270, 273-75 (9th Cir. 1990)). To the best of Plaintiff's knowledge and belief, both Defendant's in this case were properly served by the United States Marshals as ordered by the Court. Execution of service to Defendant Tupaz was effectuated on 13 May 2004 and on Defendant Ishizaki on 21 May 2004. Return of service is dated 24 May 2004. Defendants in this case were properly served.

## CONCLUSION

Plaintiff respectfully requests that Defendants' motion to dismiss be denied because Plaintiff has adequately plead his claims in the complaint.

Wherefore, I, Vincent Palomo, appearing pro se, moves this Court to deny the above mentioned motion of Defendants.

Dated this _15_ day of ____June____ 2004.


_Vincent Palomo_
Vincent Palomo
P.O. Box 3236
Hagåtña, Guam 96932

Page 12 of 12